UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| OMAR CARRANZA, | ) | No. EDCV 14-2568 AGR |
|     Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

    Plaintiff Omar Carranza filed this action on December 16, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On September 21, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

    Having reviewed the entire file, the court affirms the decision of the Commissioner.

I.

## PROCEDURAL BACKGROUND

Carranza filed an application for supplemental security income and alleged an onset date of January 1, 2005. Administrative Record ("AR") 217-25. The application was denied initially and on reconsideration. AR 89, 93. Carranza requested a hearing before an Administrative Law Judge ("ALJ"). AR 104-06. On August 17, 2012, the ALJ continued the hearing to give Carranza the opportunity to seek counsel. AR 79-88. On April 3, 2013, Carranza appeared with counsel. The ALJ conducted a hearing at which Carranza, his mother, a medical expert and a vocational expert ("VE") testified. AR 35-77. At the hearing, Carranza amended the alleged onset date to September 22, 2010, the application date. AR 44. On May 17, 2013, the ALJ issued a decision denying benefits. AR 20-30. On October 29, 2014, the Appeals Council denied the request for review. AR 1-4. This action followed.

II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than

one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Carranza had the severe impairments of borderline intellectual functioning; personality disorder, not otherwise specified, with dependent and paranoid traits; history of polysubstance abuse -- including alcohol, marijuana and methamphetamine, in remission; and recent diagnosis of paranoid schizophrenia. AR 22. His impairments did not meet or equal a listing. AR 23.

The ALJ found that Carranza had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, and could understand and remember simple, routine tasks; carry out short and simple instructions; make judgments and decisions consistent with simple, routine duties; could not perform work

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

with high production quotas or rapid assembly line work; and would need a position with little or no contact with the public.  AR 25.  He had no past relevant work and had a limited education.  AR 28.  There were jobs that existed in significant numbers in the national economy that he could have performed.  AR 29.

### C. Educational Assessment and Hypothetical to the VE

Carranza contends that the ALJ erred in determining that he had a limited education and, therefore, the hypothetical to the VE was not supported by substantial evidence.

At step five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do, given his RFC, age, education and work experience.  *Lounsburry*, 468 F.3d at 1114; 20 C.F.R. § 416.912(g).  Literacy or education level is a vocational factor relevant to the step five inquiry and not to the existence of disability.  *Silveira v. Apfel*, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000).

A limited education means "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs."  20 C.F.R. § 416.964(b)(3).  A 7th grade through 11th grade education is generally considered a limited education.  *Id.*  A marginal education means "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs."  20 C.F.R. § 416.964(b)(2).  A 6th grade education or less is generally considered a marginal education.  *Id.*  The educational level below marginal education is illiteracy, which means the inability to read or write.  20 C.F.R. § 416.964(b)(1).

As the ALJ noted, Carranza's educational history was inconsistently reported in the record, which diminished the credibility of Carranza and his mother.  AR 27.  In the Disability Report, Carranza reported that the highest grade of school he completed was 8th grade, and he did not attend special education classes.  AR 265.  In the Function

Report, completed by his mother, and the Third Party Function Report, it was reported that Carranza could not read or write. AR 271, 274, 276, 278, 282. In the Disability Report – Appeal, completed by his mother, it was reported that Carranza was "a slow person" and got poor grades. AR 301. At a consultative psychological evaluation by Dr. Colonna on March 3, 2011, Carranza indicated that he completed 10th grade and was in special education. AR 335. A March 2012 treatment note from Mesa Counseling Services indicates that Carranza stopped school in 9th grade and was a poor student. AR 392. An April 2012 psychiatric evaluation from Mesa Counseling Services indicates that Carranza dropped out of school by 10th grade and was a poor student. AR 390.

At the April 2013 hearing, Carranza testified that he completed 10th grade and he was not in special education. He was in classes for "kids who needed to better their grades. They give them different classes." AR 41, 57-58. He could read and write simple English. AR 74. Carranza's mother testified that Carranza was in "regular classes, but he was always getting F's." AR 63. The teacher never told her that Carranza was mentally "slow" but "the grades never went up from a D or an F." *Id.*

According to testing by the examining psychologist, Dr. Colonna, Carranza tested at a 6th grade equivalent in reading, a 2nd grade equivalent in spelling, and a 3rd grade equivalent in arithmetic. AR 337. Dr. Colonna found that Carranza's overall cognitive ability fell within the borderline range, but he would be able to understand, remember and carry out short, simplistic instructions. AR 338. Carranza had a mild inability to understand, remember and carry out detailed instructions, and would be able to make simplistic work-related decisions without special supervision. *Id.*

The ALJ found that Carranza had a limited education and noted that he was able to testify fluently in spoken English. The ALJ also noted that Carranza testified he could read and write simple English.[2] AR 28.

Carranza argues that he has less than a marginal education because he reads at a 6th grade level, spells at a 2nd grade level, and performs math at a 3rd grade level. Based on the record, Carranza's educational level does not meet the definition of less than marginal education. A 6th grade education or less is generally considered marginal education. 20 C.F.R. § 416.964(b)(2). There is no indication in the record that Carranza, who was able to complete IQ testing, is illiterate.

Carranza argues that a remand is necessary so that the VE may be asked a hypothetical that includes a marginal educational level together with the remaining limitations identified by the ALJ, including the preclusion from work with high production quotas and rapid assembly-line work, in an environment with little or no contact with the public. However, a marginal education means "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." *Id.* In response to the hypothetical, the VE identified the job of cleaner, housekeeping (DOT 323.687-014) that requires level one language, math and reasoning. Therefore, even assuming

---

[2] The ALJ stated that there is no finding of mental retardation. AR 27. Elsewhere, the ALJ noted a finding of mild mental retardation but stated in a parenthetical that it was "incorrect according to testing." AR 27-28 (citing AR 391). Carranza's full scale IQ was 75 using the Wechsler Adult Intelligence Scale, with verbal comprehension at 74. AR 334, 337. The DSM IV states that mild mental retardation represents an IQ level from 50-55 to approximately 70. Diagnostic and Statistical Manual of Mental Disorders (DSM IV-TR) at 42. However, the DSM IV notes that there is a measurement error of approximately five points. "Thus, it is possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior." *Id.* at 41-42. Accordingly, the ALJ erred in that Carranza's testing is not necessarily inconsistent with a diagnosis of mild mental retardation. Carranza and his mother testified about the fact that Carranza does not go out alone. However, the treatment records make no mention of any such condition. There is no indication Carranza ever sought or received treatment for it. Carranza does not challenge the ALJ's credibility findings.

the ALJ erred in finding limited education, any error was harmless. *See, e.g.*, *Landeros v. Astrue*, 2012 U.S. Dist. LEXIS 93831, *12 (C.D. Cal. July 6, 2012) (claimant with marginal education could perform past relevant work, as generally performed, of factory helper, which requires level one language, math and reasoning); *Fountain v. Astrue*, 2008 U.S. Dist. LEXIS 108460, *18 (N.D. Cal. Oct. 15, 2008) (even assuming ALJ erred in finding limited education, claimant could perform unskilled jobs with marginal education).

### D. Testimony of the VE

Carranza contends that the ALJ erred at Step Five because the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"), and the ALJ failed to explain how she resolved the conflict.

At Step Five, "an ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles."[3] *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (footnote omitted); *see also Bray v. Comm'r*, 554 F.3d 1219, 1234 (9th Cir. 2009). Social Security Ruling 00-4p requires the ALJ to "first determine whether a conflict exists" between the DOT and the VE's testimony, and "then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]."[4] *Massachi*, 486 F.3d at 1153.

In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. The ALJ's explanation is

---

[3] The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

[4] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

satisfactory if the ALJ's factual findings support a deviation from the DOT and "persuasive testimony of available job categories" matches "the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." *Id.* at 1435. Remand may not be necessary if the procedural error is harmless, i.e., when there is no conflict or if the VE had provided sufficient support for her conclusion so as to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n.19.

Here, the ALJ asked the VE to assume a hypothetical individual of 30 years old with a 10th grade education and literate in only simple English. The individual could understand and remember simple routine tasks, carry out short and simple restrictions, and make judgments and decisions consistent with simple, routine duties. The individual would be unable to perform work with high production quotas or rapid assembly line work. The individual would need a position with little to no contact with the public. AR 74. The VE testified that the hypothetical individual could perform work such as cleaner, housekeeping (DOT 323.687-014), which the VE referred to as "light janitorial." AR 75.

Carranza argues that he could not perform the cleaner, housekeeping job because it includes rendering assistance to patrons, which is inconsistent with a limitation to little to no contact with the public. The cleaner, housekeeping job is categorized as light, unskilled work. DOT 323.687-014. The job description states as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets.

*Id.*

The ALJ did not ask the VE whether her testimony conflicted with the DOT and whether a reasonable explanation existed for any conflict. However, any error is harmless because Carranza has not shown a conflict. *Massachi*, 486 F.3d at 1154 n.19. The DOT specifies that "People: Taking Instructions-Helping" is "not significant" for the light janitorial position. DOT 323.687-014, 1991 WL 672783. Carranza's RFC permitted a little contact with the public. AR 25.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: December 8, 2015

                                                 ALICIA G. ROSENBERG
                                             United States Magistrate Judge